**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **BAYMONT FRANCHISE SYSTEMS, INC.,** | Civ. No. 21-11861 (KM)(ESK) |
| **Plaintiff,** | **OPINION** |
| **v.** | |
| **AMBA SAI SHAKTI, LLC; CHAMPAKLAL M. PATEL, MITESH PATEL, MUKESH PATEL, KISHOR PATEL,** | |
| **Defendants.** | |

**KEVIN MCNULTY, U.S.D.J.:**

Baymont Franchise Systems, Inc. ("Baymont") initiated this diversity action against Amba Shai Shakti, LLC, and its alleged members, Champaklal M. Patel, Mitesh Patel, Mukesh Patel, and Kishor Patel (collectively, "defendants") for breach of contract and unjust enrichment. Because defendants have failed to answer or otherwise respond to the Complaint, the clerk entered default, and Baymont now moves for a default judgment. (DE 9.) For the reasons provided herein, I will grant Baymont's motion.

I.   **Summary**[1]

   a. **Factual Allegations**

Baymont is a Delaware corporation with its principal place of business in Parsippany, New Jersey. (Compl. ¶1.) Amba Sai Shakti is a Florida LLC with its

---

[1]   Citations to the record will be abbreviated as follows. Citations to page numbers refer to the page numbers assigned through the Electronic Court Filing system, unless otherwise indicated.

   "DE" = Docket entry number in this case.

   "Compl." = Plaintiff's Complaint (DE 1)

principal place of business in Cantonment, Florida. (*Id.* ¶2.) The individual defendants are also citizens of Florida. (*Id.* ¶ 3–6.)

On September 10, 2010, Baymont entered into a franchise agreement with Amba Sai Shakti, LLC (the "Franchise Agreement") for the operation of a Baymont guest lodging facility in Pensacola, Florida (the "Facility"). (*Id.* ¶ 12.) On December 22, 2015, Baymont and Amba Sai Shakti entered into a "SynXis Subscription Agreement" which allowed Amba Sai Shakti to use certain computer programs. (*Id.* ¶ 13.) Under the Franchise agreement, Amba Sai Shakti was required to operate the Facility as a Baymont lodging facility for a twenty-year term. (*Id.* ¶ 14.) Under the Franchise agreement and the SynXis Agreement, Amba Sai Shakti was required to pay a number of recurring fees. (*Id.* ¶ 15.)

Section 7.3 of the Franchise Agreement set the interest on "any past due amount" payable to Baymont under the Franchise Agreement "at the rate of 1.5% per month or the maximum rate permitted by applicable law, whichever is less, accruing from the due date until the amount is paid." (*Id.* ¶16.) Section 3.6 of the Franchise Agreement required Amba Sai Shakti to record all transactions it conducted and gross revenue it earned "for purposes of establishing the amount of royalties and other Recurring Fees due to [Baymont]." (*Id.* ¶17.) Additionally, the Franchise Agreement required Amba Sai Shakti to maintain "accurate financial information, including books, records, and accounts, relating to the gross revenue of the Facility." (*Id.* ¶18.) Amba Sai Shakti further "agrees to allow [Baymont] to examine and audit the entries in these books, records, and accounts." (*Id.*)

Pursuant to the Franchise Agreement, Baymont "could terminate the Franchise Agreement, with notice to Amba Sai [Shakti], if Amba Sai (a) discontinued operating the Facility as a Baymont® guest lodging establishment, and/or (b) lost possession or the right to possession of the

---

"Mallet Aff." = Affidavit of Kendra Mallet in Support of Motion for Final Judgment by Default (DE 9-3)

2

Facility." (*Id.* ¶ 19.) Amba Sai Shakti also agreed to pay liquidated damages under certain conditions, if the Franchise Agreement was terminated (*Id.* ¶ 20–23.)

In April and October 2020, Amba Sai Shakti notified Baymont that it would exercise its termination right under the Franchise agreement effective November 8, 2020. (*Id.* ¶ 29.) Baymont acknowledge the termination and informed Amba Sai Shakti that it was required to complete its post-termination obligations under the Franchise Agreement and pay outstanding recurring fees. (*Id.* ¶ 30.) Amba Sai Shakti did not pay the outstanding recurring fees and Baymont alleges that owes $82,356.72 in fees and $90,000.00 in liquidated damages, plus prejudgment interest. (*Id.* ¶ 33.)

### b. Procedural History

On May 27, 2021, Baymont filed this action, invoking the court's diversity jurisdiction under 28 U.S.C. § 1332. The Complaint asserts six counts. The first Count demands an order that Amba Sai Shakti account for all revenues it earned during the Franchise Agreement. (*Id.* ¶ 37.) The second Count demands $90,000 of liquidated damages because Amba Sai Shakti failed to pay the outstanding recurring fees after termination. (*Id.* ¶ 45.) The third Count requests that in the alterative of the liquidated damages, Baymont should receive actual damages for the premature termination of the Franchise Agreement. (*Id.* ¶ 49.) The fourth Count demands payment of $82,356.72 in recurring fees not paid by Amba Sai Shakti. (*Id.* ¶ 53.) The fifth Count demands the payment of the recurring fees under an unjust enrichment theory. (*Id.* ¶ 57.) Finally, the sixth Count relates to the individual defendants and demands that they cover the unpaid fees and liquidated damages if Amba Sai Shakti does not. (*Id.* ¶ 61.)

Defendants were properly served but failed to answer or otherwise respond to the Complaint. On September 10, 2021, the Clerk entered default. Baymont now moves for default judgment and seeks $194.249.37 in damages and prejudgment interest. (Mallet Aff. ¶ 34.)

## II.     Discussion

### a.  Legal Standard

"[T]he entry of a default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984) (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)). Because the entry of a default judgment prevents the resolution of claims on the merits, "this court does not favor entry of defaults and default judgments." *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984). Thus, before entering default judgment, the Court must determine whether the "unchallenged facts constitute a legitimate cause of action" so that default judgment would be permissible. *DirecTV, Inc. v. Asher*, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing Wright, Miller, Kane, 10A Fed. Prac. & P. Civil 3d § 2688, at 58–59, 63).

"[D]efendants are deemed to have admitted the factual allegations of the Complaint by virtue of their default, except those factual allegations related to the amount of damages." *Doe v. Simone*, 2013 WL 3772532, at *2 (D.N.J. July 17, 2013). While "courts must accept the plaintiff's well-pleaded factual allegations as true," they "need not accept the plaintiff's factual allegations regarding damages as true." *Id.* (citing *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 536 (D.N.J. 2008)). Moreover, if a court finds evidentiary support to be lacking, it may order or permit a plaintiff seeking default judgment to provide additional evidence in support of the allegations. *Doe*, 2013 WL 3772532, at *2.

### b.  Prerequisites for Entry of Default Judgment

Before a court may enter default judgment against a defendant, the plaintiff must have properly served the summons and complaint, and the defendant must have failed to file an answer or otherwise respond to the complaint within the time provided by the Federal Rules, which is twenty-one

days. *See Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 18–19 (3d Cir. 1985); Fed. R. Civ. P. 12(a).

Here, the Summons and Complaint were served on defendants in June and July 2021. (DE 5.) Defendants failed to answer or otherwise respond to the Complaint within the deadline and the Clerk's entry of default was duly noted on the docket on September 10, 2021. Therefore, the prerequisites for default have been satisfied

### c. Three-Factor Analysis

After the prerequisites have been satisfied, a court must evaluate the following three factors: "(1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987)).

### i. Factor one: Existence of a meritorious defense

As always, evaluation of the first factor is made difficult by the defendant's failure to answer or to oppose the motion for default judgment. It is also made difficult, however, by Baymont's failure to brief its entitlement to the relief sought. (*See* DE 9 at 3 (noting that Baymont declined to submit a brief under Local Civil Rule 7.1(d)(1) "because no significant legal argument is made in connection with this motion.").) Nevertheless, my independent review of the record does not suggest that Baymont's claims are legally flawed.

This Court has subject matter jurisdiction over the present action pursuant to 28 U.S.C. § 1332 because Baymont and defendants are citizens of different states and the amount in controversy exceeds $75,000. Defendants consented to the personal jurisdiction of this Court under the Franchise Agreement. (Compl. ¶ 9–10); *see also Actega Kelstar, Inc. v. Musselwhite*, No. 09-1255, 2009 WL 1794793, at *2 (D.N.J. June 22, 2009) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n. 14, 105) (noting that a forum selection clause is one way to consent to personal jurisdiction).

The Complaint contains six counts, for breach of contract and unjust enrichment and seeks to hold both Amba Sai Shakti and the individual defendants liable jointly and severally. (Compl. ¶ 34–61.) On its motion for default judgment, Baymont seeks damages it incurred as a result of defendant's breach of its obligation to remit Recurring Fees owed, liquidated damages under the Franchise Agreement, and prejudgment interest. (Mallet Aff. ¶ 35.) I will therefore focus on the breach of contract claim.

I am satisfied that the plaintiffs have set forth a legally sufficient claim of breach of contract against defendants. To establish a breach of contract under New Jersey law, a plaintiff must allege "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir.2007) (internal citation omitted).

Here, the Complaint alleges specific facts showing that Baymont and defendants entered into two valid, enforceable contracts: the Franchise Agreement and the SynXis Agreement. (Compl. ¶ 12–28.) The Complaint alleges that defendants breached their contractual obligations by failing to remit the Recurring Fees upon termination of the Franchise Agreement in accordance with the Agreement. (*Id.* ¶ 29–33.) Baymont does not explicitly plead that it has fully performed its own contractual obligations. (*See generally id.*) However, I have no facts before me to the contrary, and the Complaint alleges that defendants unilaterally terminated the Franchise Agreement, as was their right under the agreement. (*Id.* ¶ 29.) Finally, Baymont alleges that it has been financially damaged as a result of defendants' breach (*Id.* ¶ 31), and that they are entitled to receive Recurring Fees in the amount of $88,139.43, inclusive of interest (calculated at the legal rate of 1.5% per month pursuant to the Franchise Agreement) as well as $106,109.94 in liquidated damages inclusive of interest (calculated at the same 1.5% per month rate.) (Mallet Aff. ¶ 25, 34). That theory of damages is straightforward and uncontroversial.

In light of the above, I find the first factor supports default.

### ii. Factors two and three: Prejudice to Baymont and defendants' culpability

The second and third factors also weigh in favor of default. Defendants were properly served but failed to appear, defend, or otherwise respond to the Complaint. It is clear that Baymont has been prejudiced by this dereliction because it has been "prevented from prosecuting their case, engaging in discovery, and seeking relief in the normal fashion." *See Teamsters Pension Fund of Philadelphia & Vicinity v. Am. Helper, Inc.*, 2011 WL 4729023, at *4 (D.N.J. Oct. 5, 2011) (find that a defendant's failure to answer prejudices the plaintiff); *see also Gowan v. Cont'l Airlines, Inc.*, 2012 WL 2838924, at *2 (D.N.J. Jul. 9, 2012) ("[Plaintiff will suffer prejudice if the Court does not enter default judgment as Plaintiff has no other means of seeking damages for the harm caused by Defendant."). Absent any evidence to the contrary, "the Defendant's failure to answer evinces the Defendant's culpability in default." *Teamsters Pension Fund of Philadelphia & Vicinity*, 2011 WL 4729023 at *4. In this case, "there is nothing before the Court to show that the Defendant's failure to file an answer was not willfully negligent." *Id.* (citing *Prudential Ins. Co. of America v. Taylor*, 2009 WL 536043, at *1 (D.N.J. Feb. 27, 2009)) (finding that when there is no evidence that the defendant's failure to answer the complaint was due to something other than its own willful negligence, the defendant's conduct is culpable and default judgment is warranted).

Overall, then, the three factors support the entry of default judgment.

### d. Remedies

As explained *supra*, Section II.c.i., Baymont claims $194.249.37 in damages (inclusive of Recurring Fees, liquidated damages, and interest).

Pursuant to section 17.5 of the Franchise Agreement, Baymont is also entitled to attorneys' fees. (Compl. ¶ 25, 28.)

Certain items may require further discussion or documentation before a final judgment can be entered. Within 30 days:

1.   The interest figure may be updated.

2.  Attorney's fees may be updated and documented.

3.  Baymont shall state the basis on which the $90,000 figure for liquidated damages was arrived at, and shall state how it bears a reasonable relation to actual or anticipated damages. *See* ¶¶ 18.4, 12.1 of the Franchise Agreement. (Compl., Ex. A.).[2]

**Conclusion**

For the reasons set forth above, I will grant Baymont's motion (DE 9) for default judgment. An appropriate order follows.

Dated: January 12, 2022

/s/ Kevin McNulty

_____

**Kevin McNulty**
**United States District Judge**

---

[2]      The liquidated damages provision in this contract is a peculiar one, in that (under the circumstances of this case) it is expressed as a flat rate, rather than as a multiple of rooms available for rent, or some other objective measure. *Compare* ¶ 18.4 *with* ¶ 12.1 of the Franchise Agreement. In general, a liquidated damages provision must bear a reasonable relation to actual damages as to which proof is difficult or cumbersome. Under applicable New Jersey law, the courts will burden "the party challenging the clause ... [with] proving its unreasonableness." *MetLife Cap. Fin. Corp. v. Wash. Ave. Assocs. L.P.*, 732 A.2d 493, 499 (N.J. 1999); *see also Ciser v. Nestle Waters N. Am. Inc.*, 596 F. App'x 157, 159 (3d Cir. 2015); *Days Inn Worldwide, Inc. v. Pearsall Hotels, LLC*, No. CV 19-508, 2021 WL 4891925, at *7 (D.N.J. Oct. 20, 2021).